371 So.2d 951 (1979)
Robert Edward YIELDING
v.
STATE.
6 Div. 688.
Court of Criminal Appeals of Alabama.
March 27, 1979.
Rehearing Denied April 17, 1979.
*953 Arthur Parker, Birmingham, for appellant.
William J. Baxley, Atty. Gen., and Milton E. Belcher, Asst. Atty. Gen., for the State, appellee.
DeCARLO, Judge.
Robert Edward Yielding was charged with buying, receiving or concealing stolen property. After a jury trial, the appellant was found guilty and sentenced to four years imprisonment. Upon conviction, an oral notice of appeal was filed and a subsequent motion for a new trial was overruled.
The basis of this prosecution is a rifle, scope and shotgun which were found during a search of appellant's residence conducted under a search warrant. Prior to trial, the appellant filed a motion to suppress the evidence obtained during the search. A hearing was held by the trial judge and the motion was denied. Appellant alleges that the affidavit made in support of the search warrant was invalid and insufficient to establish probable cause.
At the hearing on the motion, Deputy Sheriff Jim Roberson of the Jefferson County Sheriff's Department, identified the affidavit and search warrant which were used to support the search of appellant's home.
The affidavit in question reads as follows, omitting the formal parts:
"* * * [W]ithin the past 72 hours I received information from a confidential informant that stolen property is presently being concealed at the residence of Robert E. Yielding alias Eddie Yielding located on Heflin Avenue, Forestdale, Jefferson County, Alabama. Said residence is the second house on the left side of Heflin Avenue when heading in a westerly direction after passing the intersection of Heflin Avenue and Wilcox Street, Forestdale, Jefferson County, Alabama. Said residence is a two story green brick and wood frame house with a two car basement garage.
"The information conveyed to me by said informant is based on said informant's personal knowledge and direct observation, to-wit: that within the past 72 hours said informant was inside the above described residence of Robert E. Yielding alias Eddie Yielding. Informant states that while inside of said residence he observed the following items:
"1 Remington 30-30 caliber rifle Teddy Roosevelt Commemorative Model 94 with Silver medallion in the stock
"1 Colt 22 caliber short chrome plated derringer with pearl handles
"1 Browning 12 gauge double automatic shotgun with gold engraving on the side and light colored wooden stocks
"4 Gensen [sic] TS stereo speakers approximately 3 feet tall
"1 Fisher stereo amplifier
"1 Sony Reel to Reel tape recorder
*954 "Also said informant stated that while inside above described residence he observed a quantity of marijuana, a controlled substance. Said informant has in the past used marijuana and is familiar with its appearance.
"In order to confirm said informant's reliability I looked into the Jefferson County Sheriff's Office files on reported burglaries which have occurred in Jefferson County, Alabama. My search revealed that a burglary was in fact reported by Mr. Sherrell R. Anderson on November 1, 1975. This burglary was of said Sherrell R. Anderson's residence which is located at 939 Circle Heights Drive, Brookside, Jefferson County, Alabama. Stolen in said burglary were the following items:
"1 Remington Model 94 30-30 caliber rifle, Teddy Roosevelt Commemorative Model with Hexogonal barrel and a silver medallion in the stock, Serial Numbers G9454R and 46601
"1 pair Colt 22 caliber Lord and Lady Derringers, one derringer having a blue finish and wooden handles, the other derringer being gold and chrome with pearl handles.
"1 Browning 12 gauge double automatic shotgun with gold engraving on the side with light colored wooden stocks and gold trigger
"4 Gensen [sic] TS Stereo speakers approximately 3 feet tall
"1 Fisher Stereo amplifier, Serial No. 15956
"1 Sony TC 277 Reel to Reel Tape recorder, Serial No. 220036.
* * * * * *
"CONTINUED FROM PAGE ONE
"Based on the above stated information I have reason to believe and do believe that the above described stolen property and/or marijuana, a controlled substance, are presently being concealed in the residence of Robert E. Yielding alias Eddie Yielding located at 1029 Heflin Avenue West, Forestdale, Jefferson ..., Alabama. Said residence is second house on the left hand side of Heflin Avenue heading in a westerly direction past the Heflin Avenue and Wilcox Street intersection, Forestdale, Jefferson County, Alabama, in violation of the laws of the State of Alabama."
The affidavit was signed by Officer Roberson and by an ex-officio judge of the district court of Jefferson County and was not dated.
The search warrant, which was issued on the basis of the above affidavit, states that:
"* * * there is probable cause for believing that [the above] stolen property and/or marijuana, a controlled substance, are presently being concealed in the residence of Robert E. Yielding alias Eddie Yielding located at 1029 Heflin Avenue West, Forestdale, Jefferson County, Alabama."
The warrant authorized:
"Any lawful officer of said county and said State * * * * to make, in the daytime, an immediate search of the premises described above * * * for the above described property, and if [they] find the same or any part thereof to seize the same and hold it until further order from the District Court of Jefferson County."
This warrant was signed by the district court judge of Jefferson County and dated February 4, 1977.
The return of the search warrant listed the thirty-three items seized at appellant's residence, including the three items named in the indictment. We note that, among the property seized during the search of appellant's residence, were the following items listed in the return:
"1. 3 bags marijuana
* * * * * *
"3. 4 Jensen Spkrs. [speakers]
"4. 1 Fisher Stereo Amp. Ser. # 15956
"5. 1 Sony Reel to Reel recorder Ser. # 28554,"
which were items named in the affidavit and search warrant, and:
"9. 1 Remington 30.06 RifleSer. # 6518855 [named in the indictment]
* * * * * * *955 "19. 1 Remington Mod. 1100 12 Ga. # L961315V [named in the indictment,]"
which are the items named in this indictment. The return was dated February 7, 1977 and was signed by the judge who authorized the search warrant.
Roberson testified that, before obtaining the search warrant, he went to the Jefferson County district attorney's office and consulted an assistant district attorney. After the conversation, the affidavit and search warrant were prepared and he carried them to a judge of the district court of Jefferson County for his signature.
Roberson also said that he did not make the statement that the informant was a reliable informant, but "just a confidential informant." Further, he stated that the informant had told him in a telephone conversation that he had been present in the appellant's home within the past seventy-two hours and had observed the items listed in the search warrant.
Roberson testified that, after talking to the informant, but before obtaining the search warrant, he had looked at the county sheriff's files on reported burglaries. At that time, he found that the items, listed in the affidavit as being observed by the informant, were taken in a burglary of Mr. Sherrell R. Anderson's home. After contacting Mr. Anderson, Roberson received "a better and fuller description [of the stolen items] than that which was given at the time of the offense." According to Roberson, he told the judge who issued the search warrant, that he hoped "to find a large quantity of stolen property, as well as some drugs," at the Yielding residence, the property being that taken from Mr. Anderson's residence.
Roberson testified that during the search of appellant's residence he recovered the rifle and scope, which are the subjects of appellant's prosecution, and that the other items listed in the return were recovered by Deputy Woodard and Sgt. Wilburn. During the search, approximately thirteen guns were found in a closet, and their serial numbers were then telephoned to a police radio operator to determine if they were stolen. Roberson said that the serial number of the rifle involved in the present case was checked and the rifle was found to have been stolen from the home of Terrell Randolph Mahaffey in a burglary on January 17, 1975.
Roberson stated that the four "Gensen [sic] stereo speakers and a Fisher stereo amplifier listed in the affidavit were recovered during the search from the room where the rifle was located." Further, the deputy said that the rifle he had seized was a Remington 30-06 bearing the serial number 651885.
Roberson stated that there were several items seized during the search that were later found not to be stolen and returned to appellant.
In determining the question whether the description of the items listed in the affidavit, from the information of the informant, is "one and the same property ... in the sheriff's ... burglary report," the following testimony was elicited:
"Q He didn't tell you exactly as appears in this paper marked affidavit, he didn't tell you exactly the words you have on there, did he?
"A One Remington caliber rifle, Teddy Roosevelt commemorative model 94 with silver medallion in the stock.
"Q Did he say that to you?
"A Yes, sir, he did.
"Q Exactly?
"A Exactly.
"Q What about the Colt twenty-two caliber chrome-plated Derringer?
"A Yes, sir."
The court concluded from a recording of Officer Roberson's testimony at the preliminary hearing, that the description of the first item listed in the affidavit was not reproduced "verbatim, but was similar.... The second one was verbatim and the third was verbatim and then the fourth was general."
At the conclusion of the hearing the court overruled the motion to suppress and the State presented the following evidence:
*956 Terrell R. Mahaffey testified that, when he returned to his trailer-home, at Route 2, Box 569, in Jefferson County Alabama, he noticed that the door had been "prized open," and that seven guns and several other items of property were missing.
Mahaffey stated that he called the Jefferson County Sheriff's Department and made a report of the missing property to the deputies who came to his home. Mahaffey testified to the value of some property that was taken from his home during the burglary, and named in this indictment. He stated that the rifle was valued at approximately one hundred and fifty dollars, the scope at one hundred dollars, and the shotgun at two hundred and twenty dollars. According to Mahaffey, he had identified the rifle, scope and shotgun at the sheriff's office, "six or seven months" after the burglary.
As a witness for the State, Deputy Jim Roberson testified that on February 4, 1977, he made a search of the Yielding residence at 1029 Heflin Avenue West in Forestdale, pursuant to a search warrant. Roberson stated that during the search he seized a Remington 30-06 rifle with a Liepold variable scope that was lying in a chair. Roberson said that he also recovered a Remington model 1100 shotgun which, along with other guns and property seized, was taken to the sheriff's office. He stated that Terrell R. Mahaffey later came to the sheriff's office and identified the rifle with the scope and the shotgun, as property taken from his home during a prior burglary.
At the conclusion of Mr. Roberson's testimony, the State rested its case and the appellant made a motion to exclude the State's evidence. He assigned the following grounds for the motion:
"[t]hat no corpus delicti has been proven, no venue has been proved and there is no evidence sufficient to sustain the conviction."
The motion was overruled and the appellant took the stand in his own behalf.
Appellant testified that he worked for U.S. Steel, in the Coke and Chemical Department. He stated that, after leaving work sometime in January, 1977, he had seen the rifle, scope and shotgun in question at the Cobra Lounge in Fairfield Alabama. According to Yielding, he had gone with some friends after work and a person whom he did not know asked if he wanted to buy two guns. Yielding stated that the man did not have the guns with him but instead had them in the trunk of his car. After talking for about fifteen minutes, the two men agreed on a price of two hundred and seventy-five dollars for the guns.
Yielding testified that he did not have the money with him but went to a bank, cashed his paycheck, returned and gave the man two hundred and seventy-five dollars for the guns. Yielding also stated that at the time he purchased them he did not know the guns were stolen and that he did not alter or conceal the guns.
During cross-examination, Yielding said that the friends with whom he had gone to the lounge did not see the man from whom he had purchased the guns because they had left prior to the transaction. Yielding also said that the man had told him that he had worked at U.S. Steel before being laid off, and admitted that he had not asked the man for his name or for a bill of sale.

I
The appellant contends that the affidavit in question, together with the officer's oral statement to the magistrate, was totally insufficient to validate the search warrant authorizing the search of his residence. He maintains that the affidavit and oral statement did not comport with the test for a correct affidavit defined in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.
The two-pronged test enunciated in Aguilar has been frequently repeated in the decisions of this court, most recently in Pilkington v. State, Ala.Cr.App., 343 So.2d 548. In addition, we note that probability, and not proof necessary to convict for criminal activities, is the standard for determining probable cause. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142.
*957 The first mandate of the Aguilar test requires that the affidavit show the underlying facts to justify a conclusion on the part of the magistrate that the evidence is probably located in the place sought to be searched.
In the present case, the informant stated that he had observed the guns and the marijuana listed in the affidavit "within the past 72 hours." Clearly, the affidavit in the instant case satisfies Aguilar's first requirement. The informant's information was detailed and based on personal observation, and a neutral and detached magistrate could thus conclude that the allegations were based on fact rather than suspicion, casual rumor, or "from an off-hand remark heard at the neighborhood bar."
The present case can be distinguished from Pilkington v. State, supra, in which none of the items listed in the search warrant was found. Further, the information supplied in Pilkington, was based on belief, whereas in the present case the informer had personal knowledge, in that he had seen the guns and drugs at the residence of the appellant within 72 hours of contacting the police.
The second mandate of Aguilar requires that an affidavit state the underlying circumstances to justify the conclusion that the informer was "credible" or that his information is "reliable."
The most commonly used allegation for crediting the informant's story is that the informant has previously furnished information that led to convictions. However, the credibility or reliability of the unidentified informant's information may be shown in the informant's statement of facts indicating that he was an eye witness with personal knowledge of the location of the evidence. McCreary v. Sigler, 8 Cir., 406 F.2d 1264. The credibility of the informant's information may also be established by showing that the information imparted was an admission against the informant's penal interest. See Spinelli v. United States, 393 U.S. 410, 423, 89 S.Ct. 584, 21 L.Ed.2d 637 (White, J., concurring).
Here the affidavit established that the informant was supplying information based on personal knowledge of his observations in the past 72 hours. The accuracy of the information given by the informant was also established by Deputy Roberson when he confirmed that the specific items named in the affidavit were in fact taken in the burglary of Mr. Anderson's home. In addition, the informant's reliability was supported by his admission that he had used and was familiar with marijuana, which is an admission against the informant's penal interest under Spinelli v. U.S., supra; Funches v. State, 53 Ala.App. 330, 299 So.2d 771.
Finally, we note that, as indicated in appellant's brief, the affidavit itself was not dated. However, the search warrant was dated February 4, 1977, and stated in part that, "proof by affidavit having this date been made before me as a Ex Officio Judge of the District Court of Jefferson County ...." [Emphasis added]
Thus, we would conclude that the facts in the affidavit were not "stale" and that they show a substantial basis for a neutral and detached magistrate to conclude that the informant's information was reliable and that probable cause existed for the issuance of the search warrant. We also hold that it supplied sufficient basis for determining that the informant was credible.

II
The appellant complains that the search warrant was invalid because material statements made in support of the affidavit were subsequently contradicted and proved to be erroneous. He argues:
"[T]he affiant misrepresented the description of the items listed in the sheriff's office report in order to make them conform to the description of the items allegedly given to him by the informant...."
In support of this contention, the appellant has cited McConnell v. State, 48 Ala. App. 523, 266 So.2d 328. The facts in McConnell are clearly distinguishable from *958 the case at bar. In that case, the affiant had stated in the affidavit that he had seen two razors, which had been taken in a burglary, in the accused's car. Later, in a hearing on a motion to suppress, the affiant contradicted those statements, and they were shown to be false or misstatements.
In the present case, the facts given indicate that the descriptions of the items to be seized were not contradicted. Furthermore, all that is needed to meet the requirements of specificity as regards a search warrant authorizing the search of a residence for specific goods is that a prudent officer is able to locate the property with reasonable certainty from the face of the warrant. Bates v. State, 51 Ala.App. 338, 285 So.2d 501.
The descriptions given by the informant, buttressed by the descriptions of his stolen property that Deputy Roberson received from Mr. Anderson, were sufficient to enable the officer to locate the property.
Nowhere is it shown that the descriptions in the affidavit were in fact false. Although they did not precisely match the descriptions given by the two owners, they did not contradict those descriptions and were sufficient to meet the criteria established in Bates, supra.

III
Next, appellant asserts that the seizure of the rifle, scope and shotgun was illegal because, at the time they were recovered, they were not known to have been stolen. He argues that, when the deputy telephoned the serial numbers to the radio operator in order to determine whether the guns were in fact stolen, he gave serial numbers that did not correspond to the actual numbers on the guns. Appellant insists: "[I]t is obvious that he [Deputy Roberson] is contradicted by his own testimony, and the evidence of a computer hit is erroneous."
Appellant cites, in support of this contention, Agee v. State, 45 Ala.App. 203, 228 So.2d 30. We believe that the present case can be distinguished from Agee, supra, in that the search in the present case was pursuant to a search warrant.
In Agee, supra, the search was alleged to have been consensual although the court found that the consent was not voluntarily given. In addition, in the present case, some items were in fact seized which had been listed in the search warrant.
The items seized in Agee, supra, were seized under the plain view doctrine. There, however, the court determined that there was no justification for the original intrusion and the subsequent seizure. The court held that the introduction of the evidence was not justified by the plain view rule.
In the present case, the plain view seizure of items not listed on the warrant was justified because the officers' intrusion into the Yielding residence was pursuant to a valid search warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.
During the seizure of some of the items listed in the search warrant, the officers inadvertently came across the guns and scope which are the subject of this prosecution. Although the incriminating nature of this property was not specifically determined until Deputy Roberson received verification by telephone from the sheriff's office, it is not unreasonable for a prudent police officer, upon executing a search warrant listing certain guns known to be stolen, to believe that a gun in plain view was probably stolen.
As we have stated previously, the standard for determining probable cause is not a prima facie showing of criminality but merely a probability. Beck v. Ohio, supra. Whether the serial numbers checked by the officers, and the corresponding "hit," were erroneous was a question to be determined by the jury.
Under the facts in this case, the plain view seizure came within the mandates of Coolidge v. New Hampshire, supra, and the seizure of the guns named in the indictment was lawful.

*959 IV
Appellant insists that the court's oral charge to the jury, concerning the inference to be derived from the unexplained possession of recently stolen property, was erroneous, where it excluded the definition of "recent."
He argues that the court's charge did not define "recently" so as to inform the jury that an inference from the word "recent" would not authorize a verdict of guilt unless the appellant's possession was soon after the commission of the larceny. Appellant maintains that, due to the fact that the appellant's possession was approximately one and one-half years after the guns were stolen, the court's oral instruction, excluding the definition of "recent," was prejudicial.
In the present case, the trial court's oral charge relative to this issue reads as follows:
"The law says this, the unexplained possession of recently stolen property is a fact from which you, the jury, may infer guilt, but this is to be considered with all of the other evidence in the case, and whether there is sufficient evidence of guilt is entirely up to you for your determination." [Emphasis added]
In Gilbreath v. State, 23 Ala.App. 33, 120 So. 304, this court stated:
"[W]hile the word `recent,' in this connection, is not capable of exact definition, and always varies within a certain range, with the conditions of each particular case, and while there may be cases in which the court is authorized as matter of law to pronounce the possession recent, yet the question is one of fact for the jury and a charge which ignores it or withdraws it from their consideration is erroneous." [Emphasis added]
Also, in Roley v. State, 39 Ala.App. 408, 103 So.2d 829, this court stated:
"The jury is the judge of whether or not the property was stolen `recently.'"
Therefore, it is our judgment that the oral charge given by the trial judge was sufficient to inform the jury that it was "the judge of whether or not the property was stolen `recently.'" Buckles v. State, 50 Ala.App. 548, 280 So.2d 810.

V
In his final insistence of error, the appellant claims that the trial court was in error when it would not allow testimony by the appellant to the effect that the price he paid for the stolen property was reasonable.
The appellant maintains that this testimony was relevant and material and was in rebuttal to the State's evidence of the value of the guns. He insists that the testimony would explain whether the appellant had reasonable grounds for believing the guns were stolen.
The question involved appears in the following portion from the record:
"Q Was that a reasonable price for the two guns?
"MR. BARBER: I object to that, Your Honor. It's invading the province of the jury.
"THE COURT: Sustained.
"MR. PARKER: We offer to show, if Your Honor please, that the other witness was allowed to testify as to value.
"THE COURT: I assume his value is what he paid for them, two-hundred-and-seventy-five dollars.
"MR. PARKER: That's what I asked him. Was that a reasonable price?
"THE COURT: I sustained the objection to that."
In support of this contention, appellant cites Starr v. Starr, 293 Ala. 204, 301 So.2d 78. In that case, a will contest, the Supreme Court of Alabama held that there was no abuse of discretion by a trial court in overruling an objection to a question asked of the husband, who was propounding the will, as to whether he intended to carry out a plan of property distribution agreed upon with his wife. The court went on to announce:
"We now hold that a witness, on direct examination, may testify as to his intention, motive or other physically unexpressed mental state, provided that the *960 testimony is material to the issues in the case. This is another area where the sound discretion of the trial judge will come into play." [Emphasis added]
Although it may be argued that this testimony may go to appellant's motive, as suggested in Starr v. Starr, supra, the question, whether the appellant believed the guns were stolen, was an issue for the jury to decide. In Coplon v. State, 15 Ala.App. 331, 73 So. 225, another prosecution for buying, receiving, and concealing stolen property, a similar question was asked, as follows:
"`What would that [stolen] suit be worth if owned by one person, worn by another, and you wanted to buy it?'"
In regard to the trial court's refusal to allow the question, this court stated:
"This question was objectionable because there was no evidence in this case that the suit in question was owned by one person, worn by another, and a third person desired to buy it. The matter in issue was simply the value of the suit of clothes at the time they were stolen from the witness .... and, so far as the evidence in this case shows, it was the value of these clothes when stolen from the witness in the condition they were then in that was the legitimate subject of inquiry, and not their value after they had been worn by some one else and their value to some supposed third party purchaser..." [Emphasis added]
In our judgment, the trial court made a proper ruling in sustaining the State's objection to this question. The issue in the case was not what the appellant thought was a reasonable price, but the value of the guns at the time they were stolen.
After examining the record and transcript of evidence and finding no error, we are of the opinion that the judgment of the trial court is due to be affirmed.
AFFIRMED.
HARRIS, P. J., and TYSON, JJ., concur.
BOOKOUT and BOWEN, JJ., concur specially.
BOOKOUT, Judge, concurring specially:
I concur in the result reached by the majority, but differ somewhat on the reasoning set out in support of that result.
During direct examination of the appellant, he testified concerning his purchase of the guns in question. In testifying as to his negotiations with the purported seller of the guns, the appellant stated:
"He said he wanted three hundred dollars and we kept talking about it and I tried to get him to, you know, come down on the price so then he decided to come down to two-seventy-five, so I thought it was a good price."
Defense counsel then asked the appellant, "Was that a reasonable price for the two guns?" The prosecutor objected, and the trial court sustained the objection to that question.
The majority opinion upholds the trial court stating, "The issue in the case was not what the appellant thought was a reasonable price, but the value of the guns at the time they were stolen." I beg to disagree with this reasoning. Defense counsel was not trying to establish the value of the guns for the purpose of establishing whether punishment would be the same as petit larceny rather than grand larceny pursuant to the punishment provisions of § 13-3-55, Code of Ala.1975. The issue to which the defense was referring was whether the appellant knew the guns were stolen or received them under such circumstances that a reasonable man of ordinary observation would have known that they were stolen.
Buying or receiving stolen property is not a crime absent knowledge that it was stolen or reasonable grounds for believing the property to have been stolen. The appellant emphatically stated that he did not know the property was stolen, therefore, the circumstances under which he claims to have purchased the property is very material to a key element of the offense. If he purchased the guns for a price so low that a reasonable man of ordinary observation would have been put on notice that the guns were probably stolen, then he has violated *961 § 13-3-55, supra. On the other hand if he in fact thought he was paying "a reasonable price" for the two guns, and absent any other suspicious circumstances, he would not have violated the above section. This point is even more material in a case such as this where the possession of the stolen property is remote in time from the larceny.
I concur with the result reached by the majority, but for two other reasons. First, the appellant testified immediately prior to the question objected to that the seller of the guns lowered the price down to "two-seventy-five, so I thought that was a good price." (Emphasis supplied.) He had just stated to the jury what defense counsel tried to again elicit from him by asking an improper question. "I thought that was a good price," was more or less what defense counsel was attempting to elicit by the question, "Was that a reasonable price for the two guns?" Therefore, no error would result by the trial judge refusing to allow a question calling for a repetitious answer.
Second, the question objected to did not call for the appellant to testify as to his unexpressed mental state as per Starr v. Starr, supra. That question, as phrased, actually called for the appellant to give his opinion as to the value of the two guns. No predicate was laid to establish that the appellant had any idea as to the value of guns. While there is no necessity for a witness to be qualified as an expert or a dealer in the articles in question, it is necessary that counsel, as a prerequisite to such an opinion, lay a foundation "that the witness must have had an opportunity for forming a correct opinion as to value." Gamble, McElroy's Alabama Evidence, (3d ed.), § 128.11; § 12-21-114, Code of Ala.1975 (formerly Title 7, § 367, Code of Ala.1940, as amended).
As to the reasoning expressed in part IV of the majority opinion, supra, I have additional comments. This court properly upheld the trial court in its charge to the jury.
In pertinent part, the trial judge charged:
"The law says this, the unexplained possession of recently stolen property is a fact from which you, the jury, may infer guilt, but this is to be considered with all of the other evidence in the case, and whether there is sufficient evidence of guilt is entirely up to you and for your determination."
Defense counsel's exception was:
"We except to the Court's charge on unexplained possession of stolen property. I believe the wording was unexplained possession of stolen property may be a circumstance from which you may infer guilt. Also to the comment on the verdict form where Your Honor wrote in some more stuff on one of the forms."
The exception does not apprise the trial court of any ground for the exception, nor does defense counsel explain to the trial court why the charge was in error. In addition, the exception misstated what the trial court had charged to the jury as "unexplained possession of stolen property" whereas the trial judge charged as to the unexplained possession of recently stolen property. There is quite a distinction between the legal meaning of those two phrases. Gilbreath v. State, 23 Ala.App. 33, 120 So. 304 (1929).
Now, for the first time on appeal, the appellant contends that the trial court's oral charge was improper because it omitted a definition of "recent." The trial court was not apprised of that ground, nor any other, by the appellant's exception. Even had that ground been properly stated to the trial court, no error would have resulted from the court's failure to give the jury such a definition in the absence of a written requested charge to that effect. A trial court ordinarily will not be in error merely because its oral charge is not comprehensive of all pertinent legal principles. In order to prevent any injustice in this regard, parties have the right to request written charges to supply principles omitted from the trial court's oral charge. Bowens v. State, 54 Ala.App. 491, 309 So.2d 844 (1974), cert. denied, 293 Ala. 746, 309 So.2d 850. The appellant failed to provide the trial court with a written requested charge covering the principle of law which he contends was *962 omitted from the oral charge. To quote from Justice Bloodworth's concurring opinion in Ex parte State v. Burns, 295 Ala. 423, 327 So.2d 927 (1976):
"... The Supreme Court of Alabama has never reversed a trial judge, to my knowledge, for failing to instruct. When a trial judge's instructions are not as full as defendant's counsel desires, the remedy is to request instructions explaining defendant's theory of the case. Smith v. State, 262 Ala. 584, 80 So.2d 307 (1955)."
BOWEN, J., joins in the above.